# In the United States Court of Federal Claims

No. 12-04C
(Filed August 2, 2012)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * *<br><br>**BLACKFEET HOUSING,**<br><br>                Plaintiff,<br><br>      v.<br><br>**THE UNITED STATES,**<br><br>                Defendant.<br><br>* * * * * * * * * * * * * * * * * * * * * * * | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*    Contracts; breach of trust relationship; motion to dismiss for lack of subject matter jurisdiction, RCFC 12(b)(1); statute of limitations, 28 U.S.C. § 2501 (2006); accrual of claim for breach of trust to Native American tribal agency; motion to dismiss for failure to state a claim, RCFC 12(b)(6); requirement of statute that states a specific trust responsibility. |

Terryl T. Matt, Cut Bank, MT, for plaintiff.

Kenneth D. Rooney, Washington, DC, with whom was Assistant Attorney General Ignacia S. Moreno, for defendant. Ayako Sato, Environment & Natural Resources Division, U.S. Department of Justice, and Kyra Olds, Office of General Counsel, U.S. Department of Housing and Urban Development, of counsel.

**MEMORANDUM OPINION AND ORDER**

**MILLER**, Judge.

      This case is before the court on defendant's motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. The issue for decision on defendant's jurisdictional motion is whether Blackfeet Housing Authority ("plaintiff") timely filed its complaint for breach of a trust responsibility owed to the tribal authority by the United States, which implicates the merits issue. Defendant's substantive motion questions whether the breach pleaded rests on a specific statutory trust responsibility. Argument is deemed unnecessary.

## FACTS AND BACKGROUND

The following facts are taken from plaintiff's complaint and, where necessary for addressing defendant's jurisdictional challenge, from defendant's motion to dismiss and the exhibits attached thereto. 1/ Plaintiff is a governmental entity wholly owned and operated by the Blackfeet Tribe on the Blackfeet Indian Reservation in Montana. See Compl. filed Jan. 3, 2012, at 1. Between 1977 and 1980, plaintiff constructed approximately 225 homes on the Blackfeet Reservation using federal government funds allocated through the Department of Housing and Urban Development ("HUD"). Id. ¶ 5; Def.'s Br. filed Apr. 5, 2012, at 1-2. 2/ Prior to construction plaintiff submitted the design plans for the homes to HUD for approval; however, HUD representatives were of the opinion that the plans, as submitted, would be too expensive to remain within plaintiff's budget. Def.'s Br. filed Apr. 5, 2012, at Ex. 1-2 (Nov. 29, 1976 letter from Peter A. Downs, Director, Technical Services, Office of Indian Programs to Edward Little Plume, Chairman, Blackfeet Indian Housing Authority) ("We do not believe that you will receive a bid anywhere close to being within the funds available if these plans are put out to bid as is."). In order to remain within budget, HUD advised plaintiff to redesign the housing units. Id.

It appears that plaintiff did not heed this advice initially and chose instead to solicit bids for the project under the original design. As predicted, none of the bids initially received by plaintiff were within the allocated budget. Id. at Ex. 1-3 (Mar. 18, 1977 letter from Mr. Downs to Mr. Little Plume). HUD recorded: "It is clear that the bids exceed, by a wide margin, the funds available for building the project. The primary reason for this is, [*sic*] we are convinced that the housing units and site plans were not designed to achieve a cost-effective result." Id. Unable to proceed with the project as then designed, HUD notified plaintiff that "[t]he only course available is to re-design." Id. Plaintiff then altered its design plans. Among numerous other revisions, plaintiff chose to forgo the use of any concrete in the foundation of the homes and elected to use wood for the foundation. Id. at Ex. 1-5 (Attachment to Apr. 11, 1977 Change Order executed by plaintiff) ("Delete all concrete foundations on scattered sites, substitute wood foundations as specified and detailed."). Although this may have seemed an acceptable compromise prior to construction, by 1998 the wood foundations were posing both health and safety issues to residents. Id.

---

1/ The court may consider information outside of the complaint in order to resolve a jurisdictional challenge involving the underlying facts that are relied upon to establish jurisdiction. See Ferreiro v. United States, 350 F.3d 1318, 1324 (Fed. Cir. 2003).

2/ Plaintiff alleges in the Complaint that "[m]ost of these homes have been subsequently conveyed to . . . homeowners [, but] [s]ome homes are still owned by Blackfeet Housing, and 55 of these homes are rentals." Compl. ¶ 5.

2

at Ex. 1-6 (Feb. 9, 1998 letter from Vernon Haragara, Administrator, Northern Plains Office of Native American Programs, HUD, to Tom Blackweasal, Executive Director, Blackfeet Indian Housing Authority) ("Approximately 220 wood basements are in varying degrees of decay. The [plaintiff] estimates that 55 basements are in very serious condition and another 55 basements are in serious condition.").

On August 2, 2002, Blackfeet tribal members, consisting of individual home-buyers and renters, filed suit in the United States District Court for the District of Montana against both plaintiff and HUD. See id. at 3; see also Marceau v. Blackfeet Housing, Civ. No. 4:02-cv-73-SEH (D. Mont. filed Aug. 2, 2002). The plaintiffs alleged, *inter alia*, that plaintiff and HUD should be held liable for the damages resulting from the use of wooden foundations in the homes. Def.'s Br. filed Apr. 5, 2012, at 3. Both HUD and plaintiff responded with motions to dismiss certain claims: HUD's was based on a lack of subject matter jurisdiction and failure to state a claim, and plaintiff's was based on tribal immunity. See id. at 3-4. The district court granted both motions, and the case subsequently was appealed to the United States Court of Appeals for the Ninth Circuit. In the final and dispositive Ninth Circuit opinion, that court held, as follows: (1) neither the United States Housing Act of 1937, 42 U.S.C. §§ 1437-1437j (1976), the Indian Housing Act of 1988, 42 U.S.C. §§ 1437aa-1437ee, nor the Native American Housing Assistance and Self-Determination Act of 1996, 25 U.S.C. §§ 4101-4243 (the "NAHASDA"), created a trust relationship that imposed fiduciary duties on HUD, see Marceau v. Blackfeet Housing Auth., 540 F.3d 916, 921-28 (9th Cir. 2008) 3/; (2) the tribal members had alleged sufficient facts to proceed against HUD under the Administrative Procedure Act, 5 U.S.C. §§ 702-706 (2006), Marceau, 540 F.3d at 928-29; and (3) it was inappropriate to consider the merits of

---

3/ The Ninth Circuit concluded, as follows:

> In summary, under the Housing Act, Indian housing authorities (such as [plaintiff]) applied to HUD for loans to enable *the housing authority* to develop low-income public housing designed to be sold to eligible members of the tribe. Under NAHASDA, block grants could be used *by the tribe* or its designated housing entity to repair or replace housing. As with any grant of federal funds, certain requirements had to be met to obtain and spend the funds. But the federal government held no property—land, houses, money, or anything else—in trust. The federal government did not exercise direct control over Indian land, houses, or money by means of these funding mechanisms. The federal government did not build, manage, or maintain any of the housing.

Marceau, 540 F.3d at 928.

the tribal members' claims against plaintiff because they had yet to exhaust their tribal-court remedies, id. at 920-21.

On remand the district court ruled that the tribal members' APA claims stemming from HUD's alleged decision requiring the use of wooden foundations were barred by the six-year statute of limitations set forth in 28 U.S.C. § 2401(a) (2006), because the decision to use wooden foundations in the homes was made no later than November 15, 1977. See Marceau v. Blackfeet Housing Auth., No. CV-02-73-GF-SEH, slip op. at 10-11 (D. Mont. Mar. 24, 2011). On June 5, 2012, in an unpublished decision, the Ninth Circuit affirmed the dismissal, ruling:

> [The tribal members'] claim against HUD accrued in the late 1970s, when the agency purportedly decided to require wooden foundations. At that time, [the tribal members] knew about the decision [to construct the homes with wooden foundations] and knew that it affected them. . . . That [the tribal members] may not have immediately grasped the full impact that HUD's decision might eventually have on them does not mean they knew too little in 1980 to bring an APA challenge.

Marceau v. Blackfeet Housing Auth., No. 11-35444, slip op. at 2-3 (9th Cir. June 5, 2012).

II. Procedural History

Plaintiff filed its complaint on January 3, 2012, seeking $30 million in damages resulting from HUD's alleged breach of "its trust responsibility to plaintiff." Compl. ¶ 16. On April 5, 2012, defendant moved to dismiss under both RCFC 12(b)(1) and 12(b)(6). Plaintiff responded on May 7, 2012, and defendant replied on May 31, 2012.

**DISCUSSION**

I. Standards

1. Subject matter jurisdiction pursuant to RCFC 12(b)(1)

Defendant levies the objection that plaintiff's asserted claims are outside the court's jurisdiction. Jurisdiction must be established before the court may proceed to the merits of a case. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88-89 (1998). Courts are presumed to lack subject matter jurisdiction unless it is affirmatively indicated by the record; therefore, it is a plaintiff's responsibility to allege facts sufficient to establish the court's subject matter jurisdiction. Renne v. Geary, 501 U.S. 312, 316 (1991); DaimlerChrysler

Corp. v. United States, 442 F.3d 1313, 1318 (Fed. Cir. 2006) ("[I]t is settled that a party invoking federal court jurisdiction must, in the initial pleading, allege sufficient facts to establish the court's jurisdiction." (citations omitted)). Once the court's subject matter jurisdiction is put into question, it is "incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction. . . . [The plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988) (citation omitted); accord M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1327 (Fed. Cir. 2010). However, when a federal court hears a jurisdictional challenge, "its task is necessarily a limited one." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id.

    2. Statute of Limitations

The applicable statute of limitations is 28 U.S.C. § 2501 (2006), which states, "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. "Claims by individual Indians or tribes for breach of trust are subject to the same six-year statute of limitations under 28 U.S.C. § 2501 that applies to other litigation against the United States under the Tucker Act." Oenga v. United States, 83 Fed. Cl. 594, 609 (2008) (citing Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576 (Fed. Cir. 1988)). Generally, "[a] claim first accrues when all the events have occurred that fix the alleged liability of the government and entitle the claimant to institute an action." Ingrum v. United States, 560 F.3d 1311, 1314 (Fed. Cir. 2009). When seeking to determine when a claim accrues, a court must decide when the plaintiff "was or should have been aware" of the material facts that would establish the government's liability. See San Carlos Apache Tribe v. United States, 639 F.3d 1346, 1350 (Fed. Cir. 2011) (citation omitted) (internal quotation marks omitted). This means that "the 'proper focus' must be 'upon the time of the [defendant's] acts, not upon the time at which the consequences of the acts [become] most painful.'" Navajo Nation v. United States, 631 F.3d 1268, 1277 (Fed. Cir. 2011) (alterations in original) (quoting Delaware State Coll. v. Ricks, 449 U.S. 250, 258 (1980)). Thus, a plaintiff must file a complaint with the Court of Federal Claims within six years of the occurrence of the events fixing its claim or else risk dismissal for lack of jurisdiction. See John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-34 (2008) (recognizing that compliance with the statute of limitations is a jurisdictional requirement); see also FloorPro, Inc. v. United States, 680 F.3d 1377, 1380-81 (Fed. Cir. 2012). Plaintiff bears the burden of showing that its claim was timely filed and may discharge this burden with a showing by

a preponderance of the evidence. See Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002).

     3. Failure to state a claim

Defendant alternatively moves pursuant to RCFC 12(b)(6) to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. See RCFC 12(b)(6). "The purpose of [RCFC 12(b)(6)] is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail . . . ." Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc., 988 F.2d 1157, 1160 (Fed. Cir. 1993); see also Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). The court's task in considering a motion to dismiss for failure to state a claim is to "determine 'whether the claimant is entitled to offer evidence to support the claims,' not whether the claimant will ultimately prevail." Chapman Law Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934, 938 (Fed. Cir. 2007) (quoting Scheuer, 416 U.S. at 236). "A dismissal for failure to state a claim . . . is a decision on the merits which focuses on whether the complaint contains allegations, that, if proven, are sufficient to entitle a party to relief." Gould, Inc. v. United States, 67 F.3d 925, 929 (Fed. Cir. 1995) (citation omitted).

In resolving a RCFC 12(b)(6) motion, the court must assess whether plaintiff's complaint adequately states a claim for relief under the implicated statute and regulations and whether plaintiff has made "allegations plausibly suggesting (not merely consistent with)" entitlement to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (rephrasing Twombly standard as requiring "a claim to relief that is plausible on its face"); accord Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009); McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1356-57 (Fed. Cir. 2007). Although plaintiff's factual allegations need not be "detailed," they "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations omitted). Plaintiff "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Totes-Isotoner Corp. v. United States, 594 F.3d 1346, 1354 (Fed. Cir. 2010) (quoting Twombly, 550 U.S. at 555 (alteration in original) (citation omitted) (internal quotation marks omitted)). "At the same time, a court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" Acceptance Ins. Cos. v. United States, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting Twombly, 550 U.S. at 555). The court thus "'accept[s] as true all factual allegations in the complaint, and . . . indulge[s] all reasonable inferences in favor of the non-movant'" to evaluate whether plaintiff has stated a claim upon which relief can be granted. Chapman Law Firm, 490 F.3d at 938 (alterations in original) (quoting Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001)).

II. Whether plaintiff's claim is time-barred

Plaintiff's complaint pleaded only one claim—essentially that the United States, acting through HUD, "negligently constructed, managed, and maintained these homes, resulting in the failure of its trust obligation to provide decent, safe, and sanitary housing." Compl. ¶ 13. Plaintiff lists five actions whereby HUD "materially breached its trust responsibility to plaintiff": (1) "In failing to implement effective housing policies and regulations or provide a solution to the ongoing problem of the unsafe and unsanitary shelter conditions"; (2) "In failing to ensure the 225 homes that were built to shelter the members[] were properly constructed in a safe and reasonable manner"; (3) "[By] otherwise failing to act as a prudent fiduciary by failing to protect [plaintiff] and limit the damage to [plaintiff]'s property that occurred as a result of faulty design and construction"; (4) "In failing to provide safe and sanitary housing as mandated by [f]ederal law"; and (5) "In failing in its responsibility to maintain and conserve the trust property in the statutory common-law duty of a trustee to preserve and maintain trust assets." Id. ¶ 16.

Defendant's first argument is that plaintiff has not shown and, indeed, cannot show, that it has timely filed its claim within six years of its accrual as required by 28 U.S.C. § 2501. See Def.'s Br. filed Apr. 5, 2012, at 11-17. Defendant puts forth that three possible dates exist on which plaintiff's breach of trust claim may have accrued, and all three of those dates occurred outside the six-year statute of limitations. Defendant first argues that plaintiff's claim accrued between 1977 and 1980 when the homes initially were constructed. See id. at 13. Defendant reads plaintiff's breach claim as "premised on the theory that HUD required [plaintiff] to use wood foundations for the housing units, and it was the use of wooden foundations that allegedly made the homes unsafe and created health risks for occupants." Id. Thus, defendant correctly observes that plaintiff would have known of the use of wooden foundations as early as the initial construction period, particularly in light of the fact that plaintiff was an "active participant in the formulation of the housing plans." Id. It was plaintiff that modified the original plans to include the use of wooden foundations—which HUD eventually would approve—in order to lower the price of the construction project to come within the allotted budget. Id. at 13-14. Therefore, plaintiff "was or should have been aware" of the material facts—the use of wooden foundations—during the initial construction period of 1977-1980. See id. at 15.

Second, defendant argues that the court could also find that plaintiff's claim accrued in 1998 when plaintiff had actual knowledge and notice of the problems that the wooden foundations were causing in the houses. Id. Plaintiff received a letter from HUD dated February 9, 1998, which recounted the details of a January 28, 1998 meeting between HUD

and plaintiff. See id. at Ex. 1-6. 4/ This letter reveals that, during that meeting, HUD officials and plaintiff discussed the "serious condition" resulting from the use of wooden foundations and concluded that "[a]pproximately 220 wood basements are in varying degrees of decay." Id. Given the severity of the deterioration in the houses, it was apparent to plaintiff by that time that the houses would need significant repair work, and plaintiff even listed this repair work as a matter of discussion during the Secretary of HUD's visit in 1999. Id. at Ex. 1-7 (Mar. 22, 1999 letter from S. Miller to Mike Boyd) (listing $9,945,000.00 for "HUD Units, Wood Foundations" in order to "rehab/replace 152 units @ $65K ea[ch]"). According to defendant, plaintiff's acknowledgment of the needed repairs illustrates actual notice of the problems upon which plaintiff now bases its complaint and demonstrates that, as of 1998, plaintiff was aware of the relevant facts underlying its present cause of action. Id. at 16.

Finally, defendant argues that plaintiff's claim must have accrued by August 2, 2002, when the class of tribal members filed suit against both plaintiff and HUD, primarily alleging harm from the decision to use wooden foundations. See id. By that point in time, plaintiff had full knowledge of the circumstances of the construction of the homes, the harm that the wooden foundations were causing, and its own potential liability in the matter. Thus, defendant concludes that by August 2002, plaintiff had full knowledge and notice of all material facts underlying the breach of trust claim asserted in the present suit. Id.

One difficulty presented by the structure of plaintiff's complaint is that the inquiry into the existence of subject matter jurisdiction is entangled with the merits determination as to whether the United States has a trust relationship in furtherance of which it must act as a fiduciary. Normally, jurisdiction must be established before the court may proceed to the merits of a case, Steel Co., 523 U.S. at 88-89, which, in cases such as this one, means that a court must rule on the pending RCFC 12(b)(1) motion prior to examining the alternative RCFC 12(b)(6) motion. That proves difficult in this case as evidenced by plaintiff's attempts to muster an argument as to why its claim should not be dismissed as time-barred.

---

4/ Plaintiff also concedes that between 1998 and 2002 "the homes in question were the subject of many letters and meetings between HUD representatives and Blackfeet Housing." Pl.'s Br. filed May 7, 2012, at 3. Plaintiff proceeds to summarize four additional letters, all dated from 2002, that detail the poor condition of the houses. Id. at 3-4. This acknowledgment effectively establishes that plaintiff had actual knowledge of the condition of the homes as of, at the latest, 2002.

8

The basis of plaintiff's argument follows. A "general trust relationship" exists between the federal government and the Indian tribes, which allows for a common law trust relationship to be the basis of a claim. See Pl.'s Br. filed May 7, 2012, at 5. In these types of claims, the tribe may invoke "[p]rivate trust law principles," which render the Government in a role "akin to that of a private fiduciary" whose duties have been established comprehensively within the common law. Id. Invoking those common law duties in this case, plaintiff then posits that an action for breach of fiduciary duty "'does not accrue until the trustee repudiates the trust and the beneficiary has actual knowledge of that repudiation.'" Id. at 6 (quoting Demoulas v. Demoulas Super Mkts., Inc.,677 N.E.2d 159, 173 (Mass. 1997)). 5/ Plaintiff stresses that, even despite the open communication between HUD and plaintiff regarding the condition of the houses, "there is no record that reflects [that] HUD ever told [plaintiff] that it was not responsible and that they would not help remedy the situation." Pl.'s Br. filed May 7, 2012, at 4. This leads to plaintiff's following conclusion:

> Because HUD did not repudiate the trust, it is not unreasonable for [plaintiff] to expect HUD to replace the wooden foundation homes that are in such poor physical condition that repair is likely going to exceed the cost of replacement. Finally, as of the date of the filing of this cause of action, there has been no repudiation from HUD of it[s] trust responsibility, so the [plaintiff]'s claim has not accrued.

Id. at 7. Therefore, assuming the existence of a trust relationship, plaintiff argues that its claim is not time-barred because, in fact, its claim has yet to accrue.

These logical contortions by plaintiff not only fail to respond effectively to defendant's argument, but actually raise issues of ripeness. If plaintiff is correct regarding both the existence of a trust relationship and the timing of the accrual of a claim against a trustee, it has in effect conceded that no live "case or controversy" is before the court, and

---

5/ Plaintiff does not acknowledge that case law from courts other than the United States Court of Appeals for the Federal Circuit or the United States Supreme Court is merely persuasive. See Coltec Indus. v. United States, 454 F.3d 1340, 1353 (Fed. Cir. 2006) ("There can be no question that the Court of Federal Claims is required to follow the precedent of the Supreme Court, our court [the Federal Circuit], and our predecessor court, the Court of Claims."); Bank of Guam v. United States, 80 Fed. Cl. 739, 751 (2008) ("While the holdings of the regional circuits are not binding authority on the Court of Federal Claims, the Federal Circuit considers them persuasive authority that can be instructive or helpful." (citing Summit Tech. Inc. v. Nidek Co., 435 F.3d 1371, 1376 (Fed. Cir. 2006))).

thus this issue is not yet ripe for adjudication and should be dismissed for lack of subject matter jurisdiction.  See Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967) ("[T]he ripeness doctrine . . . prevent[s] . . . courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies[.]"), overruled on other grounds by Califano v. Sanders, 430 U.S. 99 (1977).  Given that this court also concludes that plaintiff has not pleaded an applicable trust relationship, not only has plaintiff's breach of fiduciary duty claim not yet arisen, but it never will.  See infra section III.

However, even if the court overlooks this concession (and assumes the presence of a trust relationship), the statute of limitations has run.  First, as defendant notes, the binding precedent of this circuit does not require actual knowledge; rather, the standard is whether plaintiff "was or *should have been*" aware of the material facts underlying the claim.  See San Carlos Apache Tribe, 639 F.3d at 1350 (emphasis added) (citation omitted) (internal quotation marks omitted).  Moreover, the Federal Circuit already has rejected similar arguments regarding a lack of repudiation as tolling the statute of limitations for a claim that has accrued against the government.  See id. at 1354-55.  In the case at bar, the court finds that, at the very least, plaintiff had full knowledge of all material facts underlying the present complaint by 2002, rendering this date the appropriate benchmark for statute of limitations purposes.

The court can infer that plaintiff might have been laboring under a mistake as to who should bear the fiscal responsibility for the degraded houses.  The ongoing dialogue with HUD officials, who appear to have been trying to help plaintiff remedy the housing problem, perhaps led plaintiff to believe that it was HUD's responsibility to repair the houses.  This mistaken perception, however, does not toll the statute of limitations. By 2002 plaintiff had actual knowledge of the facts that would underlie its potential legal claim because plaintiff was aware that the wooden foundations in the houses were causing both safety and health hazards to residents.  It was at this point that any potential claim might have accrued, and, even if plaintiff believed that HUD was financially responsible for the repair, that misapprehension does not excuse the twelve-year delay that followed.  See Cherokee Nation of Okla. v. United States, 26 Cl. Ct. 798, 802 (1992) ("Merely because defendant did not take the initiative to clarify plaintiff's misconceptions does not mean that the illuminating information was 'inherently unknowable.'").

Accordingly, the court finds that any cause of action against the United States based on HUD's actions or inactions would have accrued no later than 2002, thereby rendering plaintiff's present suit time-barred. 6/

## III. Whether plaintiff has stated a claim upon which relief can be granted

Defendant asserts that plaintiff's "reliance on the general trust duty and notions of governmental control" is not sufficient to state a cognizable claim. See Def.'s Br. filed Apr. 5, 2012, at 17. As a result, defendant concludes, plaintiff has failed to allege a breach of a specific statutory trust responsibility, and its complaint should be dismissed.

As stated by the Supreme Court, "[t]he Government . . . is not a private trustee. Though the relevant statutes denominate the relationship between the Government and the Indians a 'trust,' . . . that trust is defined and governed by statutes rather than the common law." United States v. Jicarilla Apache Nation, 131 S. Ct. 2313, 2323 (2011) (citations omitted). Thus, "[t]he Government assumes Indian trust responsibilities only to the extent it expressly accepts those responsibilities by statute." Id. at 2325. Because of this limitation on the Government's possible fiduciary duties, the Supreme Court has mandated that, as the first of "two hurdles that must be cleared before a tribe can invoke jurisdiction . . .[,] [a plaintiff] must identify a substantive source of law that establishes specific fiduciary or other duties, and allege that the Government has failed faithfully to perform those duties." United States v. Navajo Nation, 556 U.S. 287, 290 (2009) (citations omitted) (internal quotation marks omitted). Absent that statutory duty, "neither the Government's 'control' . . . nor common-law trust principles matter." Id. at 302.

In both its complaint and response brief, plaintiff points this court to only one provision of the NAHASDA as statutory support for its present claim. 7/ Plaintiff argues that 25 U.S.C. § 4101(2)-(5) establish "the federal government's trust relationship with the

---

6/ It is arguable that the claim did accrue earlier. The court finds it unnecessary to decide specifically which of the three possible dates offered by defendant represents the actual claim accrual because all three, including the 2002 date, are beyond the six-year statute of limitations.

7/ The court commends defendant on its thorough review and explanation of the statutory framework underlying this case. However, although defendant explains the applicability of the United States Housing Act—the statute in force at the time the houses were built—plaintiff does not present any arguments thereunder. Thus, the court similarly constrains itself to a discussion of only the NAHASDA in connection with plaintiff's claims on the merits.

tribes creat[ing] a responsibility for the federal government to remedy the deplorable housing conditions on Indian reservations." Pl.'s Br. filed May 7, 2012, at 10-11.

The relevant provision of 25 U.S.C. § 4101 states, as follows:

The Congress finds that—
. . . .
(2) there exists a unique relationship between the Government of the United States and the governments of Indian tribes and a unique Federal responsibility to Indian people;

(3) the Constitution of the United States invests the Congress with plenary power over the field of Indian affairs, and through treaties, statutes, and historical relations with Indian tribes, the United States has undertaken a unique trust responsibility to protect and support Indian tribes and Indian people;

(4) the Congress, through treaties, statutes, and the general course of dealing with Indian tribes, has assumed a trust responsibility for the protection and preservation of Indian tribes and for working with tribes and their members to improve their housing conditions and socioeconomic status so that they are able to take greater responsibility for their own economic condition;

(5) providing affordable homes in safe and healthy environments is an essential element in the special role of the United States in helping tribes and their members to improve their housing conditions and socioeconomic status . . . .

25 U.S.C. § 4101(2)-(5). Based on these congressional findings in the NAHASDA, which plaintiff asserts is "a duty[-]imposing statute," plaintiff argues that this statute, coupled with "[HUD's] assumption of the obligations and duties of a trustee by establishing and maintaining comprehensive, pervasive regulatory control of tribal trust lands and housing resources, and actual control of decisions of [plaintiff], the [United States] has created a trust obligation to protect and maintain the Tribe's trust property," which thus implicates common law trust duties. Pl.'s Br. filed May 7, 2012, at 11.

Defendant responds that, while plaintiff makes summary assertions as to the existence of a statutory duty, it "utterly fail[s] to identify any specific statutory or regulatory duty that the Federal Government violated, much less one that can fairly be read to mandate monetary compensation in the event of a violation." Def.'s Br. filed May 31, 2012, at 7. Defendant

first assails plaintiff's conclusion that common law trust principles alone can create judicially enforceable obligations on the federal government. Defendant points out that the Supreme Court rejected exactly this argument in Navajo, 556 U.S. at 301-02. Def.'s Br. filed May 31, 2012, at 8-9. Instead, a statutory duty must be identified. Only once a statutory duty has been identified can common law trust principles potentially have relevance in defining the scope of that duty, a fact that defendant uses to distinguish the cases cited by plaintiff. See Navajo, 556 U.S. at 302 ("[T]rust principles (including any such principles premised on 'control') could play a role in 'inferring that the trust obligation [is] enforceable by damages,' . . . [b]ut that must be the second step of the analysis, not (as the Federal Circuit made it) the starting point." (citation omitted)). In short, without an obligation "rooted in positive law," the Government cannot be held liable for a breach of duty. See Def.'s Br. filed May 31, 2012, at 10.

Although the language to which plaintiff cites does announce a unique trust relationship between the federal government and the tribes, plaintiff neglects to heed the relevant interpretation of the effect of such language by the Supreme Court. "Congress may style its relations with the Indians a 'trust' without assuming all the fiduciary duties of a private trustee, creating a trust relationship that is 'limited' or 'bare' compared to a trust relationship between private parties at common law." Jicarilla, 131 S. Ct. at 2323 (citations omitted). Plaintiff has cited only to congressional findings, which, as legislative history, do not displace otherwise clear, unambiguous language of a statute. See United States v. Mo. Pac. R.R. Co., 278 U.S. 269, 278 (1929) ("[W]here the language of an enactment is clear, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended."); accord Leighton v. OPM, 529 F.3d 1071, 1074-75 (Fed. Cir. 2008). Further, although plaintiff makes broad statements, such as "HUD's comprehensive regulatory scheme actually delineated the government's obligations with specificity," Pl.'s Br. filed May 7, 2012, at 9, plaintiff has offered no statutory or regulatory provision to support this statement. Thus, plaintiff has made no showing that provisions of the NAHASDA imposed on the United States the duties that plaintiff now claims HUD has breached.

Indeed, as developed by defendant, it appears as though the NAHASDA actively seeks to empower entities such as plaintiff with the responsibilities for the care of tribal property. The same findings cited by plaintiff also recite that the federal government "shall work . . . to achieve the goals of economic self-sufficiency and self-determination for tribes and their members; and [that] [f]ederal assistance . . . shall be provided in a manner that recognizes the right of Indian self-determination and tribal self-governance." 25 U.S.C. § 4101(6)-(7). As such, the statutory scheme created under NAHASDA is one that favors mere federal oversight of the distribution of annual block grants to entities such as plaintiff, not direct control of day-to-day operations. HUD is empowered to provide funds that have

been allocated by Congress for the purpose, and its only action is to review housing plans submitted by tribal authorities and, if they meet certain requirements, to authorize the block grant for the housing authority to use toward affordable housing activities. See 25 U.S.C. § 4111(b)(1) (2006); 24 C.F.R. § 1000.201 (2012). Generally, however, the housing plan is to be "locally driven," 24 C.F.R. § 1000.220 (2012), and it is the responsibility of the recipient of those funds to provide for the maintenance and operation of the housing, 25 U.S.C. § 4133 (2006). This statutory and regulatory scheme does not impose the trust duties that plaintiff broadly invokes.

Because plaintiff cannot provide a specific statutory provision that establishes trust duties on the United States, it has not succeeded in pleading that the federal government has assumed any trust duties under the NAHASDA. See Lummi Tribe of Lummi Reservation v. United States, 99 Fed. Cl. 584, 598 n.12 (2011) (reciting as dictum that HUD has not assumed any trust duties under the NAHASDA). Thus, plaintiff has failed to plead a cause of action on which it can recover. 8/

## CONCLUSION

Plaintiff has not met its burden to establish subject matter jurisdiction. Even if that ruling were not dispositive, the complaint fails to state a claim upon which this court could grant relief. Accordingly, based on the foregoing, the Clerk of the Court shall dismiss the complaint for lack of subject matter jurisdiction.

**IT IS SO ORDERED**.

No costs.

/s/ Christine O.C. Miller
_____
**Christine Odell Cook Miller**
Judge

---

8/ Because plaintiff's complaint fails to plead an actionable trust duty on the part of the United States, it is not necessary to address defendant's arguments on collateral estoppel.